IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: 4:19-CR-271 |
| | ) | |
| ADIL MUNIR YUSUF | ) | |
| | ) | |
| **Defendant** | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO GOVERNMENT'S EMERGENCY MOTION FOR STAY AND
APPEAL OF UNITED STATES MAGISTRATE COURT'S ORDER OF RELEASE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Adil Munir Yusuf, Defendant in the above styled and numbered cause, by and through his attorneys of record, LUIS A. REYES and CHRISTOPHER L. PEELE and moves the Court to affirm the Release Order and the order denying the Government's Motion to Detain Defendant without bond pending trial, remove its stay of the Release Order, and order Defendant Adil Yusuf released on bond forthwith:

**SUMMARY OF ARGUMENT**

The magistrate judge in the Central District of California correctly determined that Mr. Yusuf is neither a flight risk nor a danger to the safety of any other person or the community and ordered him released on a $50,000 bond as required by 18 U.S.C. § 3142(b).  This Court should affirm that ruling and deny the Government's appeal.  Mr. Yusuf, a naturalized U.S. Citizen, has no criminal history, is not violent, and has had a stable home, family, and job in the Los Angeles area for approximately the past twenty years.  He received a target letter from the Government on November 13, 2019.  He took it seriously and hired attorneys that reached out to the Government

repeatedly to work together on this case. Despite this, the Government sought and obtained an indictment of Mr. Yusuf in mid-December. In the nearly two months since the target letter and one month since the indictment, the Government did not attempt to arrest Mr. Yusuf and Mr. Yusuf did not flee. Finally, on January 15, 20120, he was arrested and the government moved to detain without bond. The Government's newly-professed belief that he presents a flight risk or a danger to the community is undermined by its failure to arrest and detain Mr. Yusuf for two months after the target letter. He is not a flight risk or a danger to the community and should be released on bond.

## BACKGROUND

Defendant Adil Yusuf is 52 years old and a U.S. citizen who has lived in the Los Angeles, California area since 1996. He has strong familial, friendship, and employment ties to the community. He met his wife in 1998 and was married in 2003, and they have lived in the same house since then. With his wife, he has two teenage children, 13 and 15 years old, both born in the United States. (See photograph of Mr. Yusuf and his family, Exhibit A.) He has worked as an airline mechanic for American Airlines since 1998, receiving awards for his commitment and innovation on the job. (See photographs of Mr. Yusuf with his wife at awards ceremony and description of why he received award, Exhibit A.) He has never before been charged with a crime. He has no history of violence. He has a strong support group of family, friends, and co-workers. (See various letters of support, attached as Exhibit B.)

On November 13, 2019, AUSA Heather Rattan sent a target letter to Mr. Yusuf, stating he was the target of an investigation in the Eastern District of Texas related to the possession and distribution of a controlled substance. (*See* Letter from Rattan to Yusuf dated November 13, 2019, attached as Exhibit C.) Mr. Yusuf did not make any attempts to flee, rather he retained the services

of Mr. Cody Skipper, a former federal prosecutor practicing in the Eastern District of Texas and elsewhere. (*See* Peele Declaration, ¶4, attached as Exhibit D.) In later November, Mr. Skipper met with AUSA Rattan in her office to discuss the investigation of Mr. Yusuf. (*Id*., ¶4.)

Instead, Mr. Yusuf retained Luis Reyes and Chris Peele of the Ashcroft Sutton Reyes law firm on December 13, 2019. (Peele Declaration, ¶5.) Upon reviewing the docket in this matter, counsel to Mr. Yusuf discovered that on December 11, 2019, a superseding indictment had been returned in this case. (*Id*., ¶6.) The superseding indictment was redacted such that no one could be sure who the newly-added defendants were. (*Id*., ¶6.) Based on AUSA Rattan's prior target letter and statements to Mr. Skipper, however, counsel confirmed to Mr. Yusuf that the newly-added defendants very well could include him, and that it made sense to reach out the Government to discuss this possibility. (*Id*., ¶6.) Again, at this time Mr. Yusuf did not make any attempt to flee.

That same day, Mr. Peele called and e-mailed AUSA Rattan to discuss the case with her. (Peele Declaration, ¶7.) In that very first email and call, Mr. Peele made it clear that he wanted to speak with Ms. Rattan to discuss the case and avoid a surprise Mr. Yusuf. (*Id*., ¶7.) Indeed, Mr. Peele had already confirmed with Mr. Yusuf that if he was indicted, he was absolutely willing to respond to a summons in the Eastern District of Texas. (*Id*., ¶8.) Mr. Yusuf feared being arrested in front of his children or co-workers and wished to avoid that unnecessarily traumatic event. (*Id*., ¶8.)

Having received no response to his call or email, Mr. Peele reached out to AUSA Rattan the following week on December 16, 2019. (Peele Declaration, ¶9.) AUSA Rattan responded on December 17, 2019, with an email that said "Thank you for reaching out and sorry for the delay. I will try to call you tomorrow." (*Id*., ¶9.) Mr. Peele responded the next day encouraging AUSA

Rattan to call him or his partner Luis Reyes to discuss the case. (*Id*., ¶9.) AUSA Rattan did not call. (*Id*., ¶9.) Mr. Peele emailed AUSA Rattan on December 20, 2019, and once again asked AUSA Rattan to call him. (*Id*., ¶9.) AUSA Rattan did not call. (*Id*., ¶9.) AUSA Rattan did not communicate further with Mr. Peele until the day after Mr. Yusuf was arrested. (*Id*., ¶10.)

On January 15, 2020, DEA agents approached Mr. Yusuf at his workplace and arrested him. He was brought before U.S. Magistrate Judge Rozella Oliver of the Central District of California and the Government moved to detain him without bond pending trial, citing the fact that he was charged with a drug crime with a maximum punishment in excess of ten years. A pre-trial services report recommended that Mr. Yusuf be released on a $50,000 personal bond with no further supervision. Present in the courtroom were Mr. Yusuf's wife, two brothers-in-law, and a close friend. Magistrate Judge Oliver assessed the case, including a review of a pre-trial services report, and correctly applied the law. She ruled that, despite the presumption for detention found in 18 USC § 3142 that applies to felony drug crimes with a maximum punishment in excess of ten years, the defendant was not a flight risk or danger to the community. (*See* Order Granting Bond to Defendant, Dkt. Entry No. 29.)

Magistrate Oliver ordered Mr. Yusuf to post a $50,000 bond, not talk to co-defendants, surrender his passport, and limit his travel to the Central District of California and the Eastern District of Texas. (*Id*.) She then stayed her own order for 24 hours to allow the Government file an appeal to this Court. (*Id*.) The Government filed its Emergency Motion for Stay and Appeal of Release Order on January 16, 2020. (*Id*.) This Court subsequently extended the stay of the magistrate judge's order and ordered that Mr. Yusuf could appear at a hearing on the Government's motion by videoconference.

## LEGAL AUTHORITY

The Bail Reform Act (the "Act") provides that a person shall be released on his recognizance unless no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(b) (emphasis added).[1] Indeed, Congress retained the preference for the release of most defendants prior to trial. *See United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors non-detention."); *Orta*, 760 F.2d at 891 ("The wide range of restrictions available [under the Act] ensures, as Congress intended, that very few defendants will be subject to pretrial detention.").

The Act provides that a defendant shall be detained only if a magistrate judge finds 1) by clear and convincing evidence (*see* 18 U.S.C. § 3142(f)) that no condition or combination of conditions will reasonably assure the safety of the community, or 2) that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. *See* 18 U.S.C. § 3142(e). While not set forth in the Act, courts have held that flight risk must be found by a preponderance of the evidence, as opposed to the higher standard of clear and convincing evidence. *See United States v. Araneda*, 899 F.2d 368, 370 (5th Cir. 1990); *United States v. Trosper*, 809 F.2d 1107, 1109 (5th Cir. 1987); *Fortna*, 769 F.2d at 250. The burden to meet both of these standards of proof lies upon the Government.

It is correct that a rebuttable presumption can arise under 18 U.S.C. § 3142(e)(3)(a) that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required or will reasonably assure the safety of the community. But, if the

---

[1] It is important to recognize that it is not required that the magistrate judge be able to set conditions that guarantee a defendant's appearance as required and the safety of the community, only that she be able to set conditions that "reasonably assure" them. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985) (en banc).

presumption does apply, the defendant need only present some credible evidence that he is not a flight risk or danger to the community. *See United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992), cert. denied, 113 S.Ct. 1336 (1993); *Fortna*, 769 F.2d at 251. Therefore, the defendant has a burden of production, but he never has the burden of persuasion. For example, the Fifth Circuit has held that, where the Government relied upon the presumption, but the defendant made a showing that he was employed, married, a homeowner, and a long-time resident in the community, that evidence met the burden of production and rebutted the presumption such that pretrial bond was appropriate. *United States v. Jackson*, 845 F.2d 1262, 1264-66 (5th Cir. 1988).

Once rebutted, the court can continue to consider the presumption as part of the evidentiary balance, but it is not dispositive. The court must still evaluate the evidence in light of the factors enumerated in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense ... involves ... a controlled substance ...;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

*United States v. Perras*, 2019 WL 6117354, *3 (November 18, 2019) (quoting 18 U.S.C. § 3142(g)).

## **ARGUMENT**

Mr. Yusuf is not a flight risk or a danger to the community, and the Government has, through its actions, acknowledged as much. For this reason, the court in California ordered that Mr. Yusuf be released on bond.[2] Respectfully, this Court should come to the same conclusion and release Mr. Yusuf so he can return to his family and prepare his defense fully with the assistance of his attorneys.

*Mr. Yusuf is not a flight risk.*

The Government has zero evidence that Mr. Yusuf is going to flee. Instead, the Government has created the best evidence that Mr. Yusuf will not flee. Over two months ago, the Government told Mr. Yusuf in writing that he was a target, and he did exactly what is expected of an upstanding citizen – he hired an attorney and attempted to address the matter head on. This begs the question: If the Government truly thought, based on the facts it had in November, that Mr. Yusuf was a flight risk, why would AUSA Rattan send a letter to Mr. Yusuf making him aware he was the target of a federal drug conspiracy investigation? The simple answer is most often the correct answer. In this instance, the simple answer is that the Government sent a target letter because it had no concern that Mr. Yusuf would flee.

In the face of this irrefutable fact, the Government is reduced to making exaggerated and even farcical statements. For example, the Government states that Mr. Yusuf "lives in California

---

[2] For reasons unknown to defense counsel, the Government harshly criticizes Magistrate Judge Oliver. Specifically, the Government's brief states without any proof that Magistrate Judge Oliver failed to apply the presumption under 18 USC § 3142 and that she "did not know anything about the case." *See* Govt. Brief at 1. The government provides zero evidence to support such accusations. Defense counsel, on the other hand, believes Judge Oliver was aware of the materials before her (she listed them out on the record) and that she is well aware of the law that controls detention hearings and that the Government had moved for a detention hearing under 18 USC § 3142. It is relevant to note that, prior to her appointment in 2015, Judge Oliver served as an Assistant U.S. Attorney and Chief of the General Crimes Section of the United States Attorney's Office in Los Angeles and before that was an Assistant U.S. Attorney in the United States Attorney's Office in Washington, D.C. It is a safe assumption she is more than familiar with detention proceedings, the law that applies to them, and how evidence is to be evaluated under that law.

*on the Mexico border* and can easily flee." (Gov't. Emergency Motion at 8, emphasis added). To the contrary, Mr. Yusuf lives in Los Angeles, which is at least a two-and-one-half hour drive from the actual U.S.–Mexico border. In traffic, which Los Angeles has an abundance of, it can take upwards of four hours to get to the border. The Government is aware of where he lives, since they mailed the target letter to his home in November 2019.

The government also makes much of the fact that Mr. Yusuf works for American Airlines. Yet that does not allow Mr. Yusuf to travel with any less documentation than anyone else. He has been ordered to, and will gladly, surrender his passport. If he is released on the conditions set by Judge Oliver, he will not be able to travel internationally, regardless of who his employer is. [3]

The government mentions that he has connections with people who live internationally. Mr. Yusuf was born and raised in Ethiopia before he came to the United States and became a U.S. citizen. He naturally has friends and family that live in Ethiopia. But if the presence of friends and family in Ethiopia made it likely that he would flee, it is logical to expect that he would have fled when he received the Government's target letter back in November 2019. Instead, Mr. Yusuf has stayed here in the United States the entire time and he has very good reason to do so.

What the Government fails to reference in terms of family is that Mr. Yusuf's *immediate* family, his wife of nearly twenty years and his two American-born children, are here in the United States. Fleeing the United States might mean never seeing them again. Such a rash and catastrophic decision is in fact the furthest thought from the Defendant's mind. Mr. Yusuf is an American *by choice*, his children are American, and this is his country and importantly, his home. If released on bond, he is going nowhere but back to Los Angeles and to his next court appearance.

---

[3] It is worth noting at this point that a simple *ability* to flee does not justify detention. *See United States v. Himler*, 797 F.2d 156, 162 (3rd Cir. 1986). The Government must show that the Defendant is likely to flee if not detained. In other words, the ability of flight does not equal a risk of flight.

*Mr. Yusuf is not a danger to the community.*

In arguing that Mr. Yusuf is a danger to the community, the Government relies solely upon its allegations that Mr. Yusuf has conspired to distribute khat,[4] and the general proposition that drug dealers are dangerous. But this is nothing more than stating the presumption that attaches under 18 USC § 3142.  It does not actually speak to the characteristics of Mr. Yusuf.

Mr. Yusuf has no prior criminal history or episodes of violence and the government can provide no evidence thereof.  The Government also presents no evidence that he has attempted to obstruct or interfere in its investigation, even though he has known about it for two months.  To the contrary, the evidence is uncontroverted that he is a family man with a stable home, marriage, family, and employment.  He has a strong set of friends who support him.  His reputation and character are simply incompatible with someone who poses a danger to his community.

*Mr. Yusuf's history and characteristics compares favorably to other defendants given pretrial release.*

While the Court must make its detention determinations based on the unique facts of each defendant, it is at least fair to consider how certain defendant characteristics have been considered in other cases.  When Mr. Yusuf's individual history and characteristics are compared to those in other cases, it is clear he falls well within the category of defendants who should be granted pretrial release.

For example, in the case of *United States v Jackson*, cited previously, the defendant Jackson was indicted for his participation in a methamphetamine distribution conspiracy.  *Jackson*, 845 F.2d at 1264-66.  Despite this, and despite the application of the presumption under 18 USC §

---

[4] "Khat or qat (Catha edulis, Arabic: القات qat) is a flowering plant native to the Horn of Africa and the Arabian Peninsula. . . . Khat has been grown for use as a stimulant for centuries in the Horn of Africa and the Arabian Peninsula. There, chewing khat predates the use of coffee and is used in a similar social context." https://en.wikipedia.org/wiki/Khat (last visited January 16, 2020 at 4:16 pm.)

3142, the Fifth Circuit held that the district court's decision to grant pretrial release was proper. *Id*. The Fifth Circuit focused on the facts that Jackson was employed, married, a homeowner, and a long-time resident in the community. *Id.*. Similarly, Mr. Yusuf is gainfully employed at a long-time job, married to his wife of nearly twenty years, a homeowner of the same home for approximately twenty years, and a resident of Los Angeles since the mid 1990's. On the other hand, the Fifth Circuit had to also consider that Jackson was a member of a criminal motorcycle gang and had been charged with no less than seven felonies, several of which were violent felonies.[5] Mr. Yusuf could not be more different in that respect. He is not a member of a criminal motorcycle gang and has never been charged with felonies, much less violent felonies. If granting pretrial release to Jackson was proper, it is near impossible to understand why Mr. Yusuf should not be granted pretrial release.

In another case this Court is familiar with, Defendant Steven Perras was recently granted pretrial release in a case where he was indicted for possession with intent to distribute fentanyl and alprazolam – deadly controlled substances which tragically resulted in the death of his friend. *Perras*, 2019 WL 6117354 at *5. This Court was presented with evidence that Mr. Perras was a young man attending school and supporting his live-in girlfriend, his child, and a child from his girlfriend's prior relationship. *Id*. at *5. They lived together, along with his sister and her boyfriend, in a leased house. *Id*. There was also evidence that he had been employed for at least five years and had relationships of trust with his co-workers. *Id*. Again, Mr. Yusuf compares very favorably in these respects. Mr. Yusuf is married and has been for nearly twenty years, fulfilling his role as a devoted husband and father of two. They live in a home he has owned for nearly

---

[5] The defendant in *Jackson* was a member of the Bandidos criminal gang and had been charged with, but not convicted of, burglary, explosives possession, assault with intent to commit homicide, car theft, possession of stolen property, larceny and disorderly conduct. *Jackson*, 845 F.2d at 1265.

twenty years. He has worked for American Airlines for over twenty years and won awards for his job performance. On the other hand, when it comes to past criminal records, Mr. Perras has previously served probation for a misdemeanor theft, and there was evidence presented that he continued to purchase fentanyl and alprazolam from his supplier even after those drugs killed his friend. *Id*. As previously stated, Mr. Yusuf has no such criminal background and certainly has no drug problem.

With all due respect to Mr. Perras, it would appear he is a young man with a drug problem who allegedly had a role in his own friend's overdose. But he is still doing the best job he can as a father, boyfriend, and employee. Collectively, this Court characterized the evidence presented for Mr. Perras as "evidence of non-dangerous character, stability, and ties to the community." *Id*. Defendant respectfully suggests that he is a mature man with zero history of drug problems or criminal episodes, the crime he is accused of has not resulted in anyone's death, and that his personal characteristics and background are also indicative, if not more so than Mr. Perras', of a non-dangerous character, a stable family lifestyle, and strong ties to his community.

## CONCLUSION

This is not a case where the government truly believes Mr. Yusuf is a flight risk or a danger to the community. He has none of the characteristics or background that would lead any objective observer to believe that. Indeed, as of two months ago, the Government did not believe it either when it sent Mr. Yusuf a target letter. It is only now, when detention would mean Mr. Yusuf would not be able to see his wife or children for months before trial and would be under immense psychological pressure, that the government professes concerns that he might risk it all and flee the United States. It is only now, when it would mean that Mr. Yusuf's ability to help prepare his defense with his attorneys would be severely curtailed if incarcerated before trial, that the

Government expresses fears for the safety of the community. This Court should reject the government's newfound – but truly unfounded – concerns and allow Mr. Yusuf to return home to his family, job, and community.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that this Honorable Court deny the Government's Emergency Motion for Stay and Appeal of the order releasing Mr. Yusuf on pretrial bond, remove the stay of Magistrate Judge Oliver's order, and release Mr. Yusuf forthwith on the conditions previously ordered by Magistrate Oliver.

Dated: January 22, 2020

Christopher L. Peele
Texas Bar No. 24013308
Ashcroft Sutton Reyes, LLC
919 Congress Ave., Ste. 1500
Austin, TX 78701
Telephone: (512) 370 1800
Facsimile: (512) 397-3290
cpeele@ashcroftlawfirm.com

COUNSEL FOR DEFENDANT
ADIL MUNIR YUSUF

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2020, I electronically filed the foregoing motion via the Court's CM/ECF system which will serve all counsel of record properly registered with the CM/ECF system.

Christopher L. Peele
COUNSEL FOR DEFENDANT
ADIL MUNIR YUSUF