# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-271-SDJ |
| | § | |
| ADIL MUNIR YUSUF (3) | § | |

## ORDER AND MEMORANDUM OPINION

Defendant Adil Munir Yusuf was arrested in the Central District of California on January 15, 2020. A detention hearing was held before United States Magistrate Judge Rozella Oliver in the Central District of California. Magistrate Judge Oliver ordered Yusuf released on a $50,000 appearance bond and stayed her order until January 16, 2020 at 5:00 p.m. Central Time. The United States then filed an emergency motion for stay and appeal of the magistrate court's release order, requesting that this Court stay and ultimately revoke the release order. (Dkt. #30). This Court granted the motion to stay and on January 24, 2020, held a hearing on the appeal of the release order.

Because the factors set forth in 18 U.S.C. § 3142 weigh in favor of detaining Yusuf pending the resolution of this case, the government's motion to revoke Magistrate Judge Oliver's release order will be granted.

### I. Background

Yusuf, together with two co-defendants, is charged with conspiracy to possess with the intent to distribute and distribution of cathinone and cathine (khat) in violation of 21 U.S.C. § 846, as well as possession with the intent to distribute and distribution of khat in violation of 21 U.S.C. § 841(a)(1). These charges are premised on Yusuf's alleged role in an international khat distribution network.

Following Yusuf's arrest on January 15, 2020, Pretrial Services in the Central District of California recommended that Yusuf be released on a $50,000 bond with no recommended conditions of release. Magistrate Judge Oliver followed that recommendation in part, ordering that Yusuf be released on a $50,000 appearance bond and subject to several conditions of release, including the surrender of his passport, that his travel would be limited to the Central District of California and the Eastern District of Texas, and that Yusuf refrain from speaking to co-defendants.

On January 16, 2020, the United States filed an emergency motion for stay and appeal of the magistrate court's order of release with this Court, seeking to revoke the order of release and require Yusuf to remain detained pretrial. (Dkt. #30). The Court granted the stay motion and held a hearing on the pretrial detention issue on January 24, 2020. The United States presented the testimony of DEA Task Force Officer Norm Abrams, who discussed the evidence collected by law enforcement showing that Yusuf is a large-scale khat distributor and international money launderer, as well as related matters concerning whether Yusuf presents a flight risk and his potential danger to the community if released.

At the detention hearing, Yusuf's counsel requested that the United States provide any witness statements made by Officer Abrams. The government confirmed that no witness statement had been made by Officer Abrams, although he may have prepared DEA 6 reports. After the hearing, Yusuf filed a motion to strike Officer Abrams's testimony as a sanction for the government's alleged failure to produce witness statements, in violation of Federal Rule of Criminal Procedure 26.2. (Dkt. #48). Prior to submitting its response, the government provided Yusuf with over 40 DEA 6 reports. After considering the motion to strike, the government's response, and the record of the detention hearing, the Court denied the motion to strike. (Dkt. #54).

## II. Appeal of the Release Order

Under 18 U.S.C. § 3145(a)(1), when a defendant is ordered released by a magistrate judge, the government may file a motion for revocation of the release order with the district court. The district court reviews a motion to revoke a detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben¸* 974 F.2d 580, 585–86 (5th Cir. 1992) (citing *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985)).

### *A. The Law Governing the Release and Detention of Defendants Awaiting Trial*

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also Rueben*, 974 F.2d at 586 (explaining that, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required").

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to

any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3141(g); *see also United States v. Acosta-Leyva*, 751 F. App'x. 594, 595 (5th Cir. 2019).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the community." 18 U.S.C. § 3142(e). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586 (citing 18 U.S.C. § 3142(e)). Probable cause exists when offenses under the Controlled Substances Act are charged in an indictment. *See, e.g.*, *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) ("[T]his court stated that the presumption against pretrial release arises when drug crimes are charged in the indictment. It is therefore clear that the presumption was properly applied to [the defendant] upon proof that he had been indicted under the Controlled Substances Act." (citations omitted)).

Section 3142(e)'s rebuttable presumption shifts to the defendant "only the burden of producing rebutting evidence, not the burden of persuasion," which remains with the government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present evidence sufficient to rebut the presumption, the court must still review the section 3142(g) factors. *See* 18 U.S.C. § 3142(g) (stating that the court "*shall* . . . take into account the available information" (emphasis added)); *see also United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (stating that section 3142(g)

"*mandates* district court review of certain factors" (emphasis added)). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

### B. Because Yusuf Is Both a Flight Risk and a Danger to the Community, He Must Be Detained Pending Trial.

In its appeal of the magistrate judge's order of release, the United States asserts that Yusuf has not rebutted the presumption that he is a flight risk and a danger to the community, and that even if he did rebut the presumption, the section 3142(g) factors still weigh in favor of detention. To decide the motion, the Court must first determine whether Yusuf is presumed to be a flight risk and a danger to the public and, if so, whether he has presented evidence sufficient to rebut those presumptions.

The Court has reviewed the record and the parties' filings, including all the materials considered by the magistrate court. In addition to written submissions, the government presented the testimony of Officer Abrams at the detention hearing. Yusuf did not present any witnesses at the hearing, but his counsel cross-examined Officer Abrams.

*1. Section 3142(e)'s rebuttable presumption applies and has been rebutted by Yusuf.*

The rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies in this case. Yusuf has been indicted for alleged violations of 21 U.S.C. § 846 and § 841(a)(1). Under the Controlled Substances Act, Yusuf faces imprisonment of not less than 10 years and not more than life imprisonment, a fine of up to $10,000,000, and a mandatory minimum of five years of supervised release for each offense. *See* 21 U.S.C. § 841(b)(1)(A); *id.* § 846.

The indictment provides probable cause to believe that Yusuf committed the charged offenses. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony from Officer Abrams supports the finding of probable cause. *See Fortna*, 769 F.2d at 252–53 (finding probable cause, in part, using the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies, and Yusuf was required to produce rebutting evidence.

To rebut the presumption, however, Yusuf bears "only the burden of *producing* rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798 (emphasis added). Yusuf has produced evidence sufficient to rebut both the presumption that no combination of conditions will reasonably assure his appearance and that no combination of conditions will reasonably assure the public safety.

i. Appearance at trial and risk of flight

The evidence submitted shows that Yusuf, along with his wife and two teenaged children, lives in Carson, California, in a home that he and his wife own. He has lived in California for the past 21 years. For roughly ten years, Yusuf has been employed by American Airlines as an airline mechanic. Yusuf also submits that the fact that he did not flee after receiving a target letter from the United States Attorney's Office concerning this case suggests that he is not a flight risk now.

Yusuf's evidence is not persuasive regarding his flight risk, particularly given the evidence presented to the Court of Yusuf's frequent international travel, his untruthful representations to Pretrial Services concerning his recent international travels, his financial resources, his close ties to Ethiopia—a nonextraditable country—and both he and his wife's substantial involvement in the conspiracy to distribute large quantities of khat. Further, the fact that Yusuf did not flee after

receiving the target letter is immaterial to his risk of flight now, particularly in light of the volume and content of the evidence presented at the detention hearing concerning Yusuf's involvement in an international drug-distribution and money-laundering organization. However, because Yusuf only bears the burden of production, not of persuasion, he carried his burden of producing evidence sufficient to rebut the presumption as to risk of flight. *See, e.g.*, *United States v. Farguson*, 721 F. Supp. 128, 131 (N.D. Tex. 1989) (finding that defendants carried their burden of rebutting the presumption exclusively through evidence "obtained on cross-examination of the government agent"); *cf. Rueben*, 974 F.2d at 587 (determining that defendants failed to rebut the presumption that they were a danger because they presented "absolutely no evidence whatsoever" that they would cease their "continuous[] engage[ment] in the trafficking of drugs"). The presumption that no combination of conditions can reasonably assure Yusuf's appearance at trial has been rebutted but remains as a factor to be considered in the Court's analysis. *See Fortna*, 769 F.2d at 251.

        ii. Danger to the public

The presumption that Yusuf is a danger to the public has been similarly rebutted. Yusuf has presented evidence that he has no criminal history and submitted multiple letters from his family, members of his ethnic and faith communities, and coworkers attesting to his good citizenship and character. Yusuf has also filed a letter from his employer stating that he will remain "out of service with pay effective immediately pending the result of the investigation regarding possible violation of company policy." (Dkt. #44-1).

Although this evidence is not persuasive on the whole given the nature of Yusuf's alleged crime, his alleged contact with high-ranking members of the conspiracy, and his alleged participation in recruiting efforts, it is sufficient to rebut the presumption that Yusuf is a danger to the public. *United States v. Hawkins*, 617 F.2d 59, 61 (5th Cir. 1980) (noting that danger to the

community should be "concluded from all the surrounding circumstances"). The presumption, however, remains a factor to be considered in the Court's analysis of the public safety. *Fortna*, 769 F.2d at 251.

*2. Application of the section 3142(g) factors confirms that Yusuf must be detained pending trial.*

Having determined that the presumption applies and that Yusuf presented evidence sufficient to rebut the presumption as to both his appearance at trial and whether he presents a danger to the public, the Court must now consider the section 3142(g) factors to answer the ultimate question of whether the government carried its burden of proof. The Court concludes that, having reviewed the section 3142(g) factors, the government proved by a preponderance of the evidence that no combination of release conditions could reasonably assure Yusuf's appearance at trial and further proved by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending Yusuf's trial.

i. Nature and circumstances of the offenses charged

Yusuf has been charged with serious crimes. Khat is a Schedule I Controlled Substance under the Controlled Substances Act—a drug with no accepted medical use and a high potential for abuse. It is understood to function like an amphetamine, similar to bath salts, when ingested causing increased stamina, aggression, and possibly hallucinations.

If Yusuf is convicted of the crimes charged against him, he faces a lengthy term of imprisonment—each count he is charged with carries a sentencing range of ten years to a life term of imprisonment. *See* 21 U.S.C. § 841(b)(1)(A); *id.* § 846. The severity of Yusuf's potential sentence weighs heavily in favor of detention. *See United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (finding that a 375-month potential sentence "weighs heavily in favor of detention").

The circumstances of the offenses charged also weigh in favor of detention. Officer Abrams testified that federal law enforcement authorities have developed evidence that Yusuf is a large-scale khat distributor and money launderer. Officer Abrams further explained that the organization in which Yusuf operates has been involved in the importation and distribution in the United States of multi-ton quantities of khat over a substantial period of time and has internationally laundered proceeds from such distribution.

Officer Abrams also explained the organization's trafficking methods, which are complex and international in scope. In terms of scale, since April 2019, over 1000 kilograms of imported khat are allegedly attributable to the defendants currently indicted in this case. A single shipment of khat intercepted in Plano, Texas, and that led investigators to Yusuf, was worth approximately $500,000. Several thousand kilograms of imported khat are attributed to the drug trafficking organization as a whole, with at least one identified shipment valued in the millions.

The government has also developed evidence showing that Yusuf participated in both the physical distribution and financial aspects of the drug organization. At the direction of his co-defendant Abdulhakim Yahya Mohamed, and with the assistance of his wife, Medi Kebir, Yusuf helped orchestrate the movement of tens of thousands of dollars of drug funds out of the country. Officer Abrams testified that Mohamed would transfer funds to Yusuf or his wife in amounts intended to avoid scrutiny and they would, in turn, wire the same amount into Ethiopian bank accounts. Yusuf also allegedly received shipments of khat, which he repackaged and shipped, along with leasing a California apartment that is thought to be a stash house for the conspiracy.

Finally, Yusuf served in a leadership capacity within the drug organization, as he was involved in recruiting individuals to assist in the organization's activities. Officer Abrams testified that Yusuf sourced other delivery addresses and recruited residents at those addresses to accept

shipments of khat. The evidence also tends to show that Yusuf has traveled internationally to countries in which the khat distribution network was actively attempting to recruit. Yusuf was also in communication with high-level members of the organization, including those at Mohamed's level and higher.

### ii. Weight of the evidence

The Court must also consider the weight of the evidence against Yusuf, although it has been found "to be of least importance in the detention determination." *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997).

The government provided significant and compelling evidence against Yusuf. Of particular importance was the evidence closely linking Yusuf with his co-defendant Mohamed, who possessed 390 kilograms of khat in the Eastern District of Texas, an amount of the drug with a wholesale value just under $500,000. A review of Mohamed's phones following his arrest revealed that Mohamed and Yusuf were in continual contact, and that they repeatedly discussed wiring large amounts of proceeds to Ethiopia. Consistent with these discussions, in a 6-month period Yusuf and his wife wired over $90,000 to Ethiopia. Evidence derived from Mohamed's phones also showed that, since at least 2017, Yusuf has been involved in shipping khat to addresses identified by Mohamed. Officer Abrams further noted that the government has photos of shipping and banking receipts confirming Yusuf's involvement in the movement of drugs and cash, including evidence tracking shipments of khat to the address of an apartment leased by Yusuf.

Evidence of Yusuf's significant role in the drug organization, therefore, also weighs in favor of detention.

iii. History and characteristics of the Defendant

Yusuf's history and characteristics undermine any suggestion that he is not a flight risk or danger to the community. While Yusuf submits that he is a family man, devoid of a criminal history, and with deep ties to the Central District of California, this characterization is misleading, eliding portions of his history and characteristics that are deeply concerning.

Yusuf is now an American citizen, having immigrated in 1997 from Ethiopia, where he still has relatives. Although Yusuf does have family ties to his wife and children in the Central District of California, those ties are diminished because the evidence shows that Yusuf's wife, although not yet indicted, was also an active participant in the conspiracy. For example, after his arrest, Mohamed asked Yusuf to have his wife provide Mohamed with fraudulent pay stubs and a work recommendation despite having never worked for her. Yusuf and his wife provided the falsified documents requested by Mohamed. Officer Abrams also explained that the government has gathered evidence revealing that Yusuf's wife was involved in laundering the proceeds of the drug distribution organization.

Further, Yusuf and his wife have transferred over $50,000 dollars into an Ethiopian bank account in his wife's name, which cannot be recovered or traced due to the current diplomatic relationship between the United States and Ethiopia. With access to these funds, Yusuf and his family could live comfortably in Ethiopia for years. These circumstances, together with the evidence of Yusuf's international connections through the drug organization and the fact that he faces a lengthy potential prison sentence, suggest that Yusuf and his family may have both the motivation and means to flee the United States.

Finally, and arguably most concerning, is that Officer Abrams's testimony showed that Yusuf was untruthful with Pretrial Services in California regarding his travel history. The Pretrial

iii. History and characteristics of the Defendant

Yusuf's history and characteristics undermine any suggestion that he is not a flight risk or danger to the community. While Yusuf submits that he is a family man, devoid of a criminal history, and with deep ties to the Central District of California, this characterization is misleading, eliding portions of his history and characteristics that are deeply concerning.

Yusuf is now an American citizen, having immigrated in 1997 from Ethiopia, where he still has relatives. Although Yusuf does have family ties to his wife and children in the Central District of California, those ties are diminished because the evidence shows that Yusuf's wife, although not yet indicted, was also an active participant in the conspiracy. For example, after his arrest, Mohamed asked Yusuf to have his wife provide Mohamed with fraudulent pay stubs and a work recommendation despite having never worked for her. Yusuf and his wife provided the falsified documents requested by Mohamed. Officer Abrams also explained that the government has gathered evidence revealing that Yusuf's wife was involved in laundering the proceeds of the drug distribution organization.

Further, Yusuf and his wife have transferred over $50,000 dollars into an Ethiopian bank account in his wife's name, which cannot be recovered or traced due to the current diplomatic relationship between the United States and Ethiopia. With access to these funds, Yusuf and his family could live comfortably in Ethiopia for years. These circumstances, together with the evidence of Yusuf's international connections through the drug organization and the fact that he faces a lengthy potential prison sentence, suggest that Yusuf and his family may have both the motivation and means to flee the United States.

Finally, and arguably most concerning, is that Officer Abrams's testimony showed that Yusuf was untruthful with Pretrial Services in California regarding his travel history. The Pretrial

Services report prepared at the time of Yusuf's hearing before the magistrate court shows that Yusuf represented that he had only engaged in infrequent international travel. This representation, which was verified by Yusuf's wife, was untrue. In fact, Yusuf has traveled outside the United States at least thirteen times in the past four years. According to Officer Abrams's testimony, many of those trips were to countries in which the drug organization is actively recruiting. By any metric, thirteen international trips in four years cannot be accurately described as "infrequent" travel. Yusuf's willingness to misrepresent important facts relating to his flight risk and danger to the public, and his wife's willingness to affirm those untruths, also counsels in favor of detention.

All of this evidence, taken together with the testimony showing Yusuf's significant role in the drug organization and the charged offenses, weighs in favor of detention. *See Volksen*, 766 F.2d at 193 (upholding a district court's order of detention based on the presumption of flight risk and the government's evidence of the defendant's interest in fleeing the country to avoid prosecution).

### iv. Nature and seriousness of the danger posed by the Defendant

The substantial evidence provided by the government of Yusuf's significant role in an extensive drug organization, implicated in the distribution of thousands of kilograms of a Schedule I narcotic, demonstrates the nature and seriousness of the danger Yusuf poses to the public. Although the presumption that Yusuf will be a danger to the community has been rebutted, "the [C]ourt may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Hare*, 873 F.2d at 798–99; *see also Rueben*, 974 F.2d at 586 ("[T]he risk of continued narcotics trafficking on bail does constitute a risk to the community . . . ."). Yusuf's demonstrated deception with Pretrial Services concerning his recent international travel, and the double life he has apparently led for some time as an airline employee who distributes

illegal narcotics, provide further reasons to conclude that he poses a continuing threat to the community.

In sum, the Court concludes that all the section 3142(g) factors weigh in favor of revoking the magistrate court's release order. Put simply, there are no conditions of release that will reasonably assure Yusuf's appearance for further proceedings and the safety of the community.

### IV. Conclusion

It is hereby **ORDERED** that the government's appeal, and its request that the magistrate court's order of release be revoked (Dkt. #30), is **GRANTED**. The release order issued by the United States Magistrate Judge in the Central District of California is **REVOKED** and **SET ASIDE**. Defendant Yusuf shall remain in custody pending trial.

**So ORDERED and SIGNED this 7th day of February, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE